# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Beatrice Adams, *pro se*,
423 N. Milton Avenue,
Baltimore, MD, 21224,
251-654-7983



        Plaintiff,

vs.

        Case No. 2:24-cv-3199

DELTA AIR LINES, INC.,
a Delaware Corporation,
with resident agent:
Corporation Service Company,
2711 Centerville Road, #400
Wilmington, DE, 19808 or
251 Little Falls Drive Wilmington,
DE 19808

**AMENDMENT RELATING BACK TO:**
**4/17/2024 COMPLAINT FOR DAMAGES:**

**1) VIOLATION OF FEDERAL TRADE COMMISSION,**
**2) MISREPRESENTATION/FRAUD**
**3) NEGLIGENCE**
**4) TORTIOUS INTERFERRENCE**
**5) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(DEMAND FOR JURY TRIAL)**

**WITH MOTION FOR LEAVE OF COURT, IF NECESSARY, TO FILE THIS**
**AMENDMENT RELATING BACK TO: 4/17/2024 COMPLAINT FOR DAMAGES**

Comes now BEATRICE ADAMS, pro se Litigant and Plaintiff (hereafter "Plaintiff or mother"), demanding a Jury Trial and filing this 9/05/2024 "Amendment Relating Back to: 4/17/2024 Complaint for Damages …" referring to her 4/17/2024 "Complaint

1

for Damages: …"  Since the same five cause of actions listed above remain the same in both the original 4/17/2024 "Complaint for Damages: …" and this 9/05/2024 "Amendment Relating Back to: 4/17/2024 Complaint for Damages: …," this 9/05/2024 Amendment relates back to the filing date of 4/17/2024 "Complaint for Damages: …" so that Plaintiff has still tolled her statute of limitation of 4/17/2024.

By Order dated 8/6/2024 and due to the fact that Plaintiff is pro se suffering from a disability that significantly impairs her ability to perform tasks that are easily managed by others, this Court granted Plaintiff until 9/6/2024 to provide proof of service of the 4/17/2024 "Complaint for Damages: …" on Defendant DELTA AIR LINES, INC ("Defendant" or "Delta").  Service of the summons was completed on 9/3/2024. Another service on DELTA AIR LINES, INC. will include now include this 9/5/2024 "Amendment Relating Back to: 4/17/2024 Complaint for Damages that will be served today: …"  Additionally, the 8/6/2024 "Order" mentioned Plaintiff needs to correct the "TO:" section of the Summons directing it to the Defendant presumably with the Resident Agent of DELTA AIR LINES, INC. This Resident Agent is found in the 6/27/2014 "Amended and Restated Certificate of Incorporation of DELTA AIR LINES, INC." given as Corporation Service Company, 251 Little Falls Drive Wilmington, DE 19808

Further, the 8/6/2024 "Order" warned Plaintiff "that appearing pro se is not without its pitfalls, and that it is Plaintiff's responsibility to comply with the applicable rules, including but not limited to the proper filing and service of all matters before the Court (Docket No. 10)."  Pro se Plaintiff believes based on the FRCP Rule 3 and on further consideration of Plaintiff's 4/17/2024 "Complaint for Damages: …," these 9/5/2024 Amendments are necessary in the interest of clarity and the proper prosecution of her five charges connected to her cause of action in this case against Defendant.  Plaintiff moves this Court for leave, if necessary, to file this 9/5/2024 "Amendment Relating Back to: 4/17/2024 Complaint for Damages: …"  The following Amendments are added to the

4/17/2024 "Complaint for Damages: …" so that it more clearly and more correctly reads
as follows:

Pro se Plaintiff Beatrice Adams individually hereby makes the following allegations
pursuant to Senator Ossof's Foster care Safety Congressional Hearing and Investigation
Findings Report which was recently released 4/9/2024 and includes the state of Virginia,
the state where Delta airlines flew the child. Based upon investigations, congressional
hearings, Virginia's own Governor's appointed Child Ombudsman, information, facts,
Court Orders and belief—except as to allegations specifically pertaining to herself which
are based on personal knowledge— against Defendant Delta Air Lines, Inc.

## JURISDICTION

1.    Plaintiff's Causes of Action herein happened at the LAX Airport in Los Angeles at
the Delta Terminal located at 100 World Way, Los Angeles, CA. 90045 on 4/17/2022.
Case Law: A void Judgement is one rendered in absence of jurisdiction over the subject
matter or parties, Lange V. Johnson


## THE PARTIES

2.    Plaintiff is the biological Mother of her minor child known to this court as T.A.
(DOB 2007) (hereafter "Minor Child") now aged 17 years.

3.    Defendant is a company doing business as Delta Airlines that transported T.A.
(DOB 2007) to Virginia on 4/17/2022 contrary to the intent of a 4/14/2022 Juvenile Court
of Mobile County, Alabama Court Order based on the Uniform Child Custody
Jurisdiction Enforcement Act ("UCCJEA"); Plaintiff or designated parental power of
attorneys Sarah Rutledge or Roger Schuman have never been reunited with T.A. (DOB
2007) on or after 4/17/2022 and T.A. (DOB 2007) was not returned to Alabama failing to
appear at the 9/8/2022 Alabama Hearing in accordance with the 4/14/2022 Alabama
Court Order.

## STATEMENT OF THE CASE

4.   Plaintiff repeats, reiterates, re-alleges, and incorporates the foregoing sections herein as if fully rewritten verbatim.

5.   On or about 11/9/2020, T.A. (DOB 2007) was illegally taken by a stranger named Shirley King Davaris (hereafter "King") with no blood relation to Minor Child.

6.   Plaintiff has reason to believe King has represented that the Arlington County Board of Supervisors acting as the Arlington County Child Protective Service involving social worker Jessika Wanzer or Chris Ehmann subsequently misled then 23-year-old sister of Minor Child "Delaney" without legal authority told Delaney they gave full legal and physical Custody of T.A., the minor child to King contrary to Plaintiff's full legal and physical Custody Rights of her minor child and the rights of those designated to be the minor child's power of attorneys.

7.   King while in California concealed Minor Child from Plaintiff who not only had full legal and physical Custody Rights of Minor Child, but had designated family friend and attorney Sarah Rutledge who is also a GAL and a family attorney to have power attorney of T.A., as well as Roger Schuman. T.A., had these great two options but King with serious problems with obvious delusions ignoring all laws, believed to truly have legal custody of the minor child and enrolled him in an on-line Arlington, Virginia school during the COVID 19 pandemic when he did not physically live in Virginia. King never allowed Minor Child to attend his original Media charter school in Washington, DC, in which plaintiff worked hard and had won a lottery to get him in, while she was working on an assignment there in D.C., as a lobbyist for foster youth.

8.   Meanwhile, Alabama has maintained and continues to maintain exclusive subject-matter, personal, and "home state" Jurisdiction of T.A. (DOB 2007) in accordance to the UCCJEA through a 4/14/2022 Juvenile Court of Mobile County, Alabama Order ordering minor child to be brought to Mobile County, Alabama for a 9/8/2022 Alabama Hearing and not to be concealed or transported.

4

9.    The Courts and Child Protective Services in Arlington, Virginia did not have and do not have jurisdiction in accordance to the UCCJEA to give King legal and physical Custody of T.A. (DOB 2007) in or after November of 2020 and did not provide any documents or paper work that this had occurred. It did not stop King, who took the Minor Child from his home state of Alabama by not allowing him to return back home on or about 11/9/2020 was illegal and the amounting to the kidnapping of T.A. (DOB 2007).

10.    The Legal Actions in the Virginia Courts and with the Arlington County Child Protective Services in all matters concerning the Minor Child have been improperly pursued due to the minor child and the plaintiff not residing in Virginia 6 months prior to the commencement of any proceedings in any matters in Virginia, but the matter where plaintiff was unconstitutionally Jailed on false allegations for three days by Virginia. In all other matters concerning any custody Arlington, Virginia failed to serve Plaintiff concerning Court Dates, deleting Court Records, modifying Court Records, and there was a Lack of Due Process for Plaintiff all contrary to the UCCJEA which gives Alabama exclusive subject-matter, personal, and "home state" jurisdiction.

11.    On 4/17/2022 Plaintiff arrived from Alabama to LAX in Los Angeles, California on Easter Sunday to visit with family and friends. After a few delays and an over night stay in Dallas, Texas due to airplane mechanical problems.

12.    Plaintiff was in the LAX Airport hours after arriving due to luggage delays and damage.

13.    Unbeknownst to Plaintiff, a Virginia invalid Protection Order which had not been served on Plaintiff was said to existed on that day making her presence near her Minor Child illegal according to Virginia which had no jurisdiction and no business in matters concerning the Minor Child.

14.    Unexpectedly, Plaintiff recognized at LAX Airport her now 24-year-old daughter Delaney nearby with a man. Plaintiff gradually realized was her now Minor Child who

had been given the assumed name Bryson Taite Paniagua as soon as the LAX airport police confronted her about him.

15.    Very quickly, airport police were called and arrived threatening to arrest Plaintiff at the request of Arlington, Virginia. Who were alleging plaintiff was violating a protection order she had never been served. Arlington, Virginia had no right to issue any type of protection order consider plaintiff and minor child never lived in Virginia. They were "protecting" a child who had been hidden in California and had only been seen in California for more than 6 months and a mother who was a legal resident of Alabama. Airport police concluded the protection order was not in the NCIC system therefore was not a valid order. At all times Delta still validating this invalid protection order and did not allow plaintiff to approach her minor child T.A. (DOB 2007) who had been taken illegally and was believed to be trafficked. Plaintiff asked LAX police to put her minor child in a 5150 due to the child not being able to recognize his own dog, and to investigate but agents for Delta stood in the way and further hid the child and immediately were only concerned to board him on his flight.

16.    At all times mentioned, Alabama has maintained and continues to maintain exclusive subject-matter, personal, and "home state" Jurisdiction of T.A. (DOB 2007).

17.    Therefore, in accordance with U.C.C J.E.A., Plaintiff could not and cannot lose legal Custody in Virginia and they had no right to issue T.A. (DOB 2007) any protection. These laws and acts are made for situations like this to stop the abuse and kidnapping of children (See Order of Juvenile Court of Mobile County, Alabama) Child has been a lifelong legal resident of Alabama and has only had to leave and evacuate after their areas was declared a state of emergency.

18.    Attorney Sarah Rutledge and Roger Schuman were designated power of attorneys of Plaintiff's minor child since the fall of 2020, giving Arlington, Virginia no reason to intervene between the Mother and her designation of safety for the care for her minor child.

6

19.    At all times mentioned Mother and child are legal residence of Mobile, Alabama and have not given up that status.

20.    At all times mentioned Mother works as a federal lobbyist contracted for environmental and foster youth issues, meeting with Congressional members and staff on child exploitation issues through foster care in Washington, D.C. since 2018.

21.    At all times hereinafter mentioned, defendant is a foreign corporation, duly organized and existing under and by virtue of the laws of State of Delaware, authorized to do business and doing business in the State of Los Angeles, within Los Angeles County as its designated county.

22.    At all times hereinafter mentioned, defendant is an airlines company, having flights to and in the United States, and the world.

## THE UNDERLYING FACTS

23.    The minor child has lived with his mother the plaintiff in the same home, in Mobile, Alabama his entire life. His adult brother and sister lived there early on with him.

24.    The Mother Plaintiff is a restate investor and has bought, sold and airbnb's   various vacation properties and rental properties.

25.    The Mother plaintiff would vacation in the Warhurst beach and Bay house properties in Alabama every summer since the infant minor was a toddler due to the close connection she and Mrs. Warhurst shared. The two families were close family friends and their children were also very close with each other.

26.    In 2020 during the pandemic the two families decided to extend the summer vacation visit to start early May thru late September so that their children could have playmates to quarantine together, while Covid 19 was spreading across the globe.

27.   In September and late October Hurricane Sally and Zeke destroyed and flooded the plaintiff and infant child's home in Mobile, County Alabama and they had to evacuate on November 1, 2020 due to their area being declared a state of emergency, plaintiff filed her FEMA relief and traveled to get T.A to safety.

28.   While passing thru Arlington, Virginia on November 6th 2020, the mother plaintiff and minor child had been forcibly separated after the mother contacted the police to let them know the minor child who was 13 had wondered off something autistic children at do often and that she was in the process of locating him. From that moment on the mother and child would never hug and see each other again. Their health would deteriorate as they now became the victims to a scheme to separate them and exploit them for federal funding. The mother went from healthy and successful to incapacitated from the several months torture. The minor child went from honor roll to well cared for to neglected and failing academically with severe mental and emotional problems.

29.   Roger Schuman the minor child's designated guardian tried to get possession of the minor child to keep him safe, but he could not find him. He has contacted everyone who can answer these questions in Arlington, Virginia on how he can bring the child to safety and not one person has answered him. The refuse to allow him in any Arlington, Virginia court trials concerning the minor child and meetings. Attorney Sarah Rutledge contacted court officials from Arlington, Virginia who kept misleading her in what they were up to.

30.   On November 10, 2020 Magistrate Judge Paul W. Kosher in Arlington, Virginia ruled that the child be returned to his mother at once. After leaving court the mother could not find her child anywhere. Mother contacted Police and said if he was out of state there was nothing local police could do. Out-of- state police said they could not take a report over the phone.

31.   On November 10th, 2020 the minor child was located in California and had been concealed by Shirley King Davaris a complete stranger to the minor child without authority or court papers, telling him his mother had lost custody. She started denying his

8

actual legal custodial parents the right to the child in a plot, where she openly stated T.A. the autistic child would pay her extra if he was in state care. The next day after coerced him to come with her she took him house shopping. The plaintiff overheard king putting fantasies in his mind that she would keep him forever and he would have his own room, and that he could not return home due to his mother having severe mental issues which was not true.

32.  She plotted with a social worker Jessica Wanzer in Virginia who held no jurisdiction of the minor child. They both began stating the mother had an unstable life style, was mentally ill and the child needed more stability and tried to force a complete removal by using fabricated evidence of abuse and misrepresentations about mental health issues that did not exist in an affidavit.

33.  King went as far as to make T.A. stop attending his D.C. media school, he had been accepted to and she forced him to attend an online school in Virginia. Hoping they could both could frame the mother by weaponizing the child protection/welfare system against her.

34.  Child welfare/protection system is proven to do more harm than good to a children and is plagued by those prioritizing federal funding instead of the well being and safety of the child, In recent reports by Senator Ossof's congressional hearings this system is known for administering "dangerous combinations of psychotropic drugs" that are not needed without medical supervision to control children. The report also stated children are being removed without meeting protocal, and they are placed in a dangerous foster care system. The majority of children are  abused and sex trafficked  creating the many cause of deaths we see in the data. Children from foster care 80% of people who are in and out of prison their entire life, this is not a place for a child such as T.A. with better options.

35.  This new released report in April 9th of 2024 from Senator Ossoff's foster care safety findings sheds light to the fact that removals and medicating children are done

9

violating their own protocols. Protocols are set to make sure children do not get abused in the system and due to these violations congress investigations conclude children are routinely abused and neglected.

36.   During this time T.A. was illegally concealed and taken while he was visiting his adult sister in California violating laws and statutes, three states issued protection orders; M.D., C.A., and A.L.  Maryland issued emergency custody and protection orders for the plaintiff (mother) and warrants for those attempting to harm her and her minor child. California issued immediate protection orders and said they could not issue the mother custody because she already had custody and the people who had kidnapped and concealed him had no right to custody. Alabama issued an order protecting the minor child T.A., and declared home state jurisdiction and exclusive jurisdiction.

37.   King immediately followed the instruction of DHS Arlington, Virginia county Attorney Jason McCandless who was advising her on what to do and how to get away with their crimes, they quickly flew the child to Virginia without parental consent from the plaintiff or the child's power of attorneys and gave the child away and without the state holding jurisdiction and the people holding authority gave him away to Virginia foster care late July 2021, misleading the Arlington,Virginia court that no one wanted the child and the mother had given the child up and used another child's name. Knowing they could circumvent criminal charges if they "muddied" the situation by putting the minor child into "the system".

38.   The adult sister, Delaney called she told the plaintiff she had been threatened with Jail and never seeing her brother again if she did not give Virginia her brother while they were in California while she was planning the minor child's birthday party. That is when plaintiff learned the minor child had been relocated to Virginia. Delaney  also told her own mother she would no longer be able to speak to her anymore because she was afraid of losing access to her younger brother forever and had to cut ties.  The plaintiff mother in disbelief and shock this was happening called the Virginia Governor's office. Jewel his

constituent services person called back and claimed while being recorded. Virginia held

no jurisdiction of the plaintiff's minor child and could not help with the matter.

Meanwhile the child was sitting in a basement in Arlington, Virginia and had been

heavily medicated to control him while he was in deep fear and emotional devastation.

He was told her was given away when in fact he was not. This was just one of the abusive

cruel tricks Arlington, Virginia used to cover up the situation of a kidnapp the child.

39.   On April 14th in an order the state of Alabama Judge Brown upheld his home state

jurisdiction and ORDERED this child not travel or be hidden from anyone who claims to

be parents or guardians to him and proclaimed this protection due to Alabama being ihis

home state jurisdiction

40.   On April 17th, 2022 while the minor child was still being hidden from his mother

the plaintiff mother ran into her infant child at the airport. Both frantic because the child

had been through much mental abuse  and the mother in a state of shock at how bad and

drugged the child had been, Delta called the police immediately from the scene this had

created, but yet still put the child on an airplane not waiting for an investigation. The

LAX airport police had ruled that the order in Virginia was not valid and the only valid

order was the one from Alabama. Yet no one followed the valid order and the child was

again trafficked and long gone once again.

 41.   The mother plaintiff and his entire family have been trying to return the minor child

back safely and bring the family back together since the terrible destruction from

Arlington, Virginia bad state actors prioritizing profits, federal funding rather than the

well-being of the minor child, but have failed to get him returned back safely to his

guardians or the plaintiff mother and have mentally abused the child who is no longer

mentally healthy or in honor roll academically. He is neglected, isolated, taught to hate

his own mother each day and tormented not being able to get back to his life. Each day

blaming the mother plaintiff for this travesty each step pf the way and  being told those

misleading him who continue this scheme such as the agents for delta Airlines and the bad state actors are the "good guys".

## NOTICE OF TOLLING FOR PLAINTIFF

42.   There are five common situations when there is a tolling of the statute of limitations in a California personal injury case. These are when the plaintiff is:

1.    a minor,

2.    located out of the state,

3.    incapacitated,

4.    legally insane, or

5.    in prison.

A "statute of limitations" is a legal term meaning the period of time a person has to bring a lawsuit. If a party brings a claim after the limitations period expires, then the claim will likely be dismissed, per California Code of Civil Procedure Section 335.1.

"Tolling" provisions work to stop or temporarily suspend the statute of limitations period. When the tolling period comes to an end, the clock starts ticking again.

## AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF

43.   Defendant by its agents, servants, representatives and/or employees, was reckless, careless, negligent, grossly negligent and intentionally interfered with the advantageous enjoyed or secured by plaintiff to protect her own minor child from harm by sheltering the child from an invalid protection order.

29 Defendant by its agents, servants, representatives and/or employees, by its ruining a mere expectancy that a relationship would have continued but for the interference, helped severe the most precious bond and known protection and safety for this child who was then indoctrinated to fear his own mother who had nurtured him and taken great care of him his entire life.

12

44.   Delta, by failing to uphold the applicable laws and rules, neglected to safeguard the plaintiff and her minor child. This failure stemmed from an inability to correctly interpret laws, judicial orders, and the company's own regulations to adequately supervise the plaintiff's situation at the LAX airport delta terminal. Instead of following the home state judge's orders from Alabama, Delta relied on misleading statements made by Jill Abbott, who communicated with them over the phone. As a result, Delta concealed, allowed and facilitated the boarding of the minor child without any communication between the child and his mother, transporting him to a complete stranger whom the mother had never met or heard of.

45.   Delta's failure to review documents related to the legal situation, its neglect in adhering to its internal rules and policies, and its breach of protocols for minor travel led to the transport of the minor to a state where he did not reside. Since then, the child has been subjected to drugging and exploitation. His former classmates described him heavily on something that makes him look asleep all day, but are afraid to come forward so they too are not taken illegally from their homes. The minor was brought into this situation through a scheme involving coercion, intimidation, and threats, causing severe emotional distress, trauma, and substantial financial burdens to the plaintiff. The damages to both the infant and the plaintiff are significant, permanent, and will continue into the future.

46.   As a result of the foregoing, defendant is liable to pay a full, fair and reasonable damages to the plaintiff.

47.   By reasons of the foregoing, plaintiff is entitled to recover all damages from the defendant including, punitive damages for defendant's callous disregard for plaintiff's well-being.

48.   This cause of action exists to compensate victims of conduct that inflames the sense of human decency.

49.   Defendant knew or should have known the acts would cause emotional distress when plaintiff had provided the valid judges order and had Delta agents her minor was

being trafficked with another child's name and forced him to board and fly under fraudulent circumstances with another child's identity and information.

50.   When the minor child had been flown to another state, Abbott who intentionally lied to LAX police via phone about having a valid protection order for the child according to her the plaintiff mother had just broke out of a mental institution when the plaintiff had never been in a mental institution and when in fact her protection order after police investigated was invalided At some point after the minor child had arrived in Virginia at Abbot's house someone had persuaded the minor child to lie and falsify a police report to local police. This is a crime to give false and untrue testimony about his mother the plaintiff. This was another attempt to maliciously prosecute the mother. The Child was made to say the mother had a ticket on his flight and tried to talk to him upon realizing it was him when in fact she did not, when she had every right to do so. The minor was encouraged to commit a crime.

51.   Defendant's and the people orchestrating this conduct was outrageous, indecent, atrocious, odious, uncivilized, or intolerable. As they chose to believe a false narrative and went through great lengths to carry it through.

52.   Plaintiff suffered emotional distress as a direct result became fully incapacitated from this injury and trauma, she would suffer a series of strokes and brain injury.

  AS FOR THE SECOND CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF

53.   Plaintiff repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effects if more fully set forth at length herein.

54.   Defendant was reckless, careless and negligent as stated herein.

55.   As a result of defendant's negligence, plaintiff mother was caused to suffer sever traumatic emotional distress, fearful her child had been severely injured, lost, kidnapped and/or trafficked out of LAX to a foreign country, by verbal misrepresentations and invalid documents LAX police verified to be invalid caused unnecessary panic and

distress for months; and the plaintiff has otherwise been damaged, all of which damages are permanent in nature and continuing into the future.

56..   As a result the foregoing, defendant is liable to pay full, fair and reasonable damages to plaintiff.

57.   By reasons of the foregoing, plaintiff is entitled to recover all damages from the defendant, including punitive damages for defendant's callous disregard for the well-being of plaintiff and the danger placed on her infant child. Due to the shock and worry plaintiff has suffered strokes, traumatic brain injury from never receiving meaningful information as to her infant child's whereabouts except for he was last seen by plaintiff when delta  transported her minor child onto a flight in Los Angeles California at the LAX airport.

58.   Wherefore, plaintiff demands judgment against the defendant, to recover for all damages, all together with the cost and disbursements of this action.

## AS FOR A THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFF MOTHER

59.  Plaintiff repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein,

60.   Defendant was reckless, careless, and negligent as set forth above.

61.    As a result of defendant's negligence, plaintiff and her infant child were caused to suffer as set forth above.

62.  Based on the foregoing, the Plaintiff is entitled to recover all damages under common law, including punitive damages, due to the defendants' callous disregard for her well-being and the danger posed to her minor child. The shock, pain, and distress caused by these actions have resulted in the Plaintiff suffering strokes and a traumatic brain injury, stemming from never receiving any meaningful information about why she never had the right to check on her child or his whereabouts and by the pain of never seeing him again

15

from this cruel scheme by delta and bad actors. The last time the Plaintiff saw her child
was when Delta transported her minor onto a flight, and he was last seen at LAX airport
in Los Angeles, California. Subsequently, further exploitative schemes were carried out to
remove the child from his family.

Wherefore, plaintiff demands judgment against the defendant, to recover for all damages,
all together with the cost and disbursements of this action

Declaration of Beatrice Adams

I, Beatrice Adams, declare as follows:

1. I am a citizen of Mobile, Alabama and above the age of 18. I have personal knowledge
of the facts set forth in this declaration and, if called as a witness, I could and would
competently testify thereto under oath.

2. At various times in the past four years I purchased flights while in the County of Los
Angeles from Defendant Delta Air Lines Inc..

3. I declare under the penalty of perjury under the laws of the State of Maryland and the
United States that the foregoing is true and correct and that this declaration was executed
in Baltimore, Maryland, this 17th day of April, 2024.

Beatrice Adams

**PRAYER FOR RELIEF**

Plaintiff, Beatrice Adams, brings this action against Defendant, Delta, for violations of
the Interstate Commerce Act ("ICA"), Plaintiff alleges as follows: 1. Defendant, Delta, is
a transportation company that provides interstate travel services. 2. On or about April 17,
2022, and possibly on other occasions Defendant Delta transported a minor known as
T.A. across state lines who is being used for the purpose of exploitation and trafficking. 3.

This act violates the ICA, as it prohibits the transportation of individuals across state lines for the purpose of exploitation or trafficking. 4. As a direct and proximate result of Defendant's violations of the ICA, Plaintiff suffered damages, including but not limited to, emotional distress, permanent injuries and economic losses. WHEREFORE, Plaintiff demands judgment against Defendant, Delta, as follows: 1. Compensatory damages in an amount to be determined at trial; 2. Punitive damages in an amount to be determined at trial; 3. Attorneys' fees and costs of suit; 4. Such other relief as the Court deems just and proper. Dated: September 5, 2024

**JURY TRIAL DEMANDED**

Dated: September 5, 2024

Respectfully submitted,

Beatrice Adams (Pro Se)

423 N. Milton Ave

Baltimore, MD. 21224

CERTIFICATE OF SERVICE

I Beatrice Adams, hereby declares under the penalty of perjury that copie(s) of the foregoing have been served to by personal service:

Delta Air Lines, Inc
251 Little Falls Drive
Wilmington, DE 19808